## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### DELTA DIVISION

**GLENN ALLEN DOSS**                                                        **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO.: 2:08 CV 227-P-A**

**BOYD GAMING CORPORATION,**
**a/k/a BOYD GAMING, INC., d/b/a**
**SAM'S TOWN HOTEL AND GAMBLING HALL**                         **DEFENDANT**

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### FACTS

On or about April 10, 2007, Glenn Doss was hired as a beverage supervisor for the Defendant, Sam's Town Hotel and Gambling Hall.  (Deposition of Glenn Allen Doss, pp. 13, 16; Exhibit "1"; Personnel Change Form dated April 10, 2007, Exhibit "2")  As a shift beverage supervisor, Doss supervised the barbacks, cocktail servers, and bartenders. (Id., p. 19)  Glenn Doss was an excellent employee who was complimented several times by upper management because of the way he worked.  (Id., p. 23) Roberta ("Bobbie")  Ploch was Doss' immediate supervisor.  (Id., p. 21)

On or about November 27, 2007, Doss received a call from Julia Eckhardt, who told Doss that she was on the way to the hospital because she was ill.  (Doss depo., pp. 23-24)  Doss told Eckhardt that she would have to contact someone at Sam's Town because he was home on medical leave himself as well.  (Id.)   Doss later received a call from Eckhardt and her friend, Diane Frost, informing Doss that Eckhardt had been diagnosed with Tuberculosis, was at the hospital, and that they were unable to reach anyone at Sam's Town.  (Id.)  Frost testified that she told Doss to get in

touch with Bobbie [Ploch] and if you could not get in touch with Bobbie, ask for someone else. (Deposition of Carolyn Diane Frost, p.19, Exhibit "3")  Doss told them that he would try and get in touch with someone at Sam's Town.  (Id.)

Knowing this was critical information, Doss called the beverage supervisor on duty, Ray Lane, and asked him to send an email to Bobbie Ploch, explaining to her the situation and asking her to call him when she came into work first thing in the morning.  (Doss depo., p. 24)  There was no one from Human Resources to call at that time of the night to inform them of the problem.  (Doss depo., p. 44)  Ray Lane recalls receiving the call and telling Doss he needs to notify Bobbie Ploch. (Deposition of Ray Lane depo., p. 9, Exhibit "4")  Doss asked Lane if he would inform Ploch and Lane told Doss that he would.  (Id.)

When Doss did not hear from Ploch in the morning, he called Sam's Town and talked to Kathy Pritchett and told her to try and get in touch with Ploch so he could give her additional information.  (Doss depo., p. 25)  In the afternoon, Ploch finally called Doss and he explained to her what was going on.  (Id.)  Ploch told Doss that the situation was being handled by Human Resources department.  (Id., p. 26)

On November 28, 2007, Doss went to the doctor, who sent him to the emergency room because the doctor thought he might have a blood clot in his leg.  (Doss depo., p. 27)

On November 29, 2007, Doss received a call from Ploch, who informed him that he had been terminated for violating HIPAA law.[1]  (Doss depo., p. 27)  Ploch told Doss that there was nothing she could do, that it had gone through Human Resources.  (Id., p. 28)  However, the only persons that Doss had conveyed the information about Eckhardt to were Bobbie Ploch, Kathy Pritchett and

---

[1]The Health Insurance Portability and Accounting Act of 1996, 42 U.S.C. § 1320d-6.

Ray Lane, who were all managerial persons for the Defendant, and only did so at the request of Julia Eckhardt.  (Id., p. 45)

On November 30, 2007, Doss called Sam's Town and talked to Betty Ferguson, who once again told Doss that he had violated HIPAA law.  (Doss depo., p. 28)

A few days later, Julia Eckhardt contacted Doss, and Doss told her that he had been let go. (Doss depo., p. 29)  Eckhardt told Doss that he what he did with her permission and offered to write a letter to try and help him out.  (Id., pp. 29-30)  In the letter, signed by both Julia Eckhardt and Diane Frost, and notarized, it states:

> . . . I was finally told by my attending physician . . . that I had the contagious and potentially deadly disease Tuberculosis . . . I knew I needed to make contact with my employer to make them aware of my condition. . .  I asked my friend Diane to try to find a phone and call the toll free number for the casino and tell them what I had been diagnosed with but she was unable to get in touch with any of my superiors so I decided to have her call Glen Doss instead and ask if he would please help me by calling the casino and make them aware of my Tuberculosis diagnosis and he told Diane that he would indeed place the call. . ..

(Exhibit "5", Affidavit dated December 3, 2007)

In the affidavit, Eckhardt made it clear that she had asked Doss to make the call and to please disclose the fact that she had Tuberculosis to Sam's Town.  (Id.)  A few days later, Eckhardt found out she was misdiagnosed, she did not have the dreaded disease, and she was expecting a full recovery.  (Id.)

In January 2008, Doss sent an email to Food and Beverage Director, Marc Silverberg, trying to get his job back, but to no avail.  (Doss depo., p. 30; Email From Glenn Doss dated January 5, 2008, Exhibit "6")

In contrast to Glenn Doss being terminated for reporting what Eckhardt told him to report, Kathy Pritchett, female, disclosed the information to supervisors and hourly employees.  (Doss

3

depo., p. 33) Kathy Pritchett was also a supervisory employee of the Defendants. (Id.) Even though she also worked some hours as a waitress and was a dual rate employee, Defendant has failed to show how this difference would allow her to disclose HIPAA information of a worker while Doss could not. In fact, Pritchett informed Rebecca Heath about Eckhardt having TB at a Walgreens, in the presence of a Walgreens employee.[2] (Id., p. 35) In an admission by a party opponent, Kathy Pritchett called Doss and told him that she had told Rebecca Heath about the situation. (Id., p. 46)

Kathy Pritchett knew she had messed up, because she admitted to Glenn Doss that she had to call Rebecca Heath and tell her not to say anything about it. (Id., p. 35)

Defendant now claims Doss violated company policy by disclosing the information about Eckhardt to other supervisors, which is incorrect. Defendant changed its story because originally it claimed that Doss had violated HIPAA law. However, HIPAA is clear that Doss was not a covered entity:

> HIPAA's privacy rule states in relevant part that a "covered entity" may not use or disclose protected health information, except as permitted or required by the regulations. *See* 45 C.F.R. § 164.502.(a). "Covered entities" under HIPAA are: Health plans, health care clearinghouses and health care providers who transmit any health information electronically. *See* 45 C.F.R. § 160.102(a).

*State v. Straehler*, 2007 WL 4409679 (Wis.App. Dec. 19, 2007)

Further, Doss was only doing what Eckhardt had requested him to do. In fact, instead of violating company policy, Doss was following company policy, which preaches that supervisors are supposed to deal with problems by following the SOS acronym, "see it, own it, solve it." (Doss depo., p. 47) That is exactly what he did when he tried his best to convey this important information

---

[2]Pritchett claimed that it was her daughter who said something to Rebecca Heath at the Walgreens. (Deposition of Kathy Pritchett, pp. 10-11, Exhibit "7") Regardless, even under her version of the facts, she told her husband, and negligently allowed her child to overhear the conversation. (Id.) Pritchett also called Ploch the next day at work and discussed it with her. (Id.)

4

to management at Sam's Town.

Defendant claims that Roberta Ploch, Marc Silverberg and Betty Ferguson made the decision to terminate Doss. This is not true. Betty Ferguson made the decision to terminate Glenn Doss, allegedly for violations of HIPAA. (Deposition of Roberta Ploch, p. 11, Exhibit "8"; Personnel Change Form dated November 28, 2007, Exhibit "9") According to Ploch, she did not know of any other reason why Doss was terminated. (Id., pp. 12, 14) According to Marc Silverberg, "It was not my recommendation to fire Glenn Doss; that decision was made by Betty Ferguson. I believed that Glenn Doss was doing a good job as a beverage supervisor." (Marc Silverberg Affidavit, Exhibit "10") Since Bobbie Ploch was the person who hired Doss, Defendant is not entitled to a same actor inference. (Id., p. 15)

After Doss was terminated, he was replaced by Kathy Pritchett, female. (Doss depo., p. 35; Roberta Ploch depo., p. 8; Kathy Pritchett depo., pp. 6-7, 21)

When Doss was terminated, Defendant told him it was for the misconduct of violating the HIPAA law. (Doss depo., p. 50) Since that time, it has made up other reasons for the termination, apparently realizing that he did not violate HIPAA law. (Id.) The truth is, Doss was never disciplined for any misconduct prior to his termination. (Id.,p. 53) Further, Glenn Doss never left work prior to the end of his shift without being told he could do so. (Doss depo., p. 31) On four or five occasions, his schedule may have changed and he was called in early so he would get off early, and this was all approved by Ploch. (Id., p. 32)

After his illegal termination, Doss applied for unemployment benefits, which Defendant opposed. (Doss depo., pp. 11-13) Defendant claimed that Doss had violated HIPAA law and committed misconduct by calling out improperly. (Id.) During the hearing, Defendant admitted

that they had checked and found out that he had called out properly.  (Id.)  The MDES held that

Doss had not violated HIPAA law, and had not committed misconduct associated with his job.  (Id.;

Exhibit "11", Administrative Law Judge Decision)

Defendant has now filed its Motion for Summary Judgment. [Docket 34]

Plaintiff will show that Defendant's motion is not well taken, except where otherwise

conceded, and should be denied.

## STANDARD OF REVIEW

"[S]ummary judgment is an extreme and drastic measure which courts should use sparingly

and only in the clearest of cases." *Printy v. Crochet & Borel Services*, 196 F.R.D. 46, 50 (E.D. Tex.

2000).   Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine

issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Hirras*

*v. National R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir. 1996) (quoting Fed. R. Civ. P. 56(c).

The party seeking summary judgment carries the burden of demonstrating that there is no evidence

to support the non-movant's case.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 325 (1986).

"Although summary judgment is a useful device, it must be used cautiously or it may lead

to drastic and lethal results."  *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).  See also,

*Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989); *Runnells v. Armstrong World Industries, Inc.*,

105 F.Supp.2d 914, 918 (C.D. IL 2000).

In ruling on a motion for summary judgment, the Court is not to make credibility

determinations, weigh evidence, draw inferences from the facts, or draw from the facts, legitimate

inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Rather, the

6

evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255.

The United States Supreme Court reversed the Fifth Circuit's setting aside of a jury verdict in an employment discrimination case in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). In *Reeves*, the Fifth Circuit Court of Appeals had applied the *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (*en banc*) test in rejecting a jury verdict. The Supreme Court overturned the Fifth Circuit, holding:

> In concluding that these circumstances (defendant's impressive evidence of non-discrimination) so overwhelmed the evidence favoring petitioner that no rational trier of fact could have found that petitioner was fired because of his age, the court of appeals impermissibly substituted its judgment concerning the weight of the evidence for the jury.

*Reeves,* 530 U.S. at 153.

Juries play a paramount role in employment cases and in evaluating summary judgment evidence. This Court should not engage in credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the fact, which are jury functions, not those of a judge. *Reeves*, 530 U.S. at 133.

In *Valle v. Johnson Controls World Services, Inc.*, 957 F.Supp. 1404, 1414 (S.D. Miss. 1996), the Fifth Circuit held, "Because Title VII complaints generally involve complex and disputed facts, summary judgment is often an inappropriate method of adjudicating such claims." Further, the Fifth Circuit has held:

> In reviewing a motion for summary judgment, the court must indulge every reasonable inference from the underlying facts in favor of the party opposing the motion. The party who defended against the motion for summary judgment must have his allegations taken as true and must receive the benefit of the doubt when his assertions conflict with those of the movant. In general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve

7

> nebulous questions of motivation and intent. Often, motivation and intent can only
> be proved through circumstantial evidence; determinations regarding motivation and
> intent depend on complicated inferences from the evidence and are therefore
> peculiarly within the province of the fact finder.

*Thornbrough v. Columbus and Greenville Railroad Co.*, 760 F.2d 633, 640-41 (5th Cir. 1985). See also, *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150 (7th Cir. 1994); *Batey v. Stone*, 24 F.3d 1330 (11th Cir. 1994).

"Trial courts must be particularly cautious about granting summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Peralta v. Cendant Corp.*, 123 F.Supp.2d 65, 75 (D. Conn. 2000) (*citing Chertkova v. Connecticut General Life Insurance Co.*, 92 F.3d 81, 87 (2d Cir. 1996)). Where the facts are such that two inferences may be drawn, a factual issue for the jury is presented. *Hunt v. Cromartie*, 526 U.S. 541 (1999). "At the summary judgment stage, the nonmovant need only point to the existence of a genuine issue of material fact." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

Finally, "a motion for summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy, and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Gibson v. Henderson*, 129 F.Supp.2d 890 (M.D. N.C. 2001).

Defendant cannot meet that test and summary judgment would be improper.

## ARGUMENTS AND AUTHORITIES

### I.      Defamation

Plaintiff withdraws his claim for defamation at this time.

### II.      Malicious Interference with Future Employment

8

Plaintiff withdraws his claim for malicious interference with future employment at this time.

## III.   Gender Discrimination

Title VII claims may be proven with either direct or circumstantial evidence. *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192-92 (5th Cir. 2001). When the plaintiff presents direct evidence of intentional discrimination, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).

More commonly, however, plaintiffs lack any sort of "smoking gun" evidence of discrimination and must resort to proving their case circumstantially through the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

### A.   Prima Facie

In order to make a circumstantial prima facie case of unlawful gender discrimination, Doss need only introduce evidence that:

(1)    he is a member of a protected class;

(2)    he is qualified;

(3)    he experienced an adverse employment decision; and

(4)    he was replaced by someone outside the protected class or he was treated less favorably than employees outside the protected class.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

#### *1.   Protected Class*

Glenn Doss is a male, which is a protected class under Title VII.

#### *2.   Qualified*

9

Glenn Doss had not been written up prior to his illegal termination. Marc Silverberg, Food and Beverage Supervisor, stated that Doss was doing a good job.

### 3.      *Adverse Employment Decision*

On or about November 28, 2009, Glenn Doss was terminated.

### 4.      *Replaced by Someone of a Different Gender, or Similarly-Situated Employees were Treated Differently.*

It is undisputed that Glenn Doss was replaced by Kathy Pritchett, a female, satisfying the fourth element of his prima facie. Further, Doss was treated less favorably than a similarly situated female, Kathy Pritchett. It is undisputed that Doss was asked by Eckhardt to tell persons at Sam's Town about having TB. It is undisputed that Doss disclosed this information to only managerial employees, including Ray Lane, Kathy Pritchett, and Bobbie Ploch, at Eckhardt's request. Plaintiff did not violate Defendant's Confidentiality Policy, but Katy Pritchett did. In the Policy, it states, "This requirement does not, of course, prohibit you from discussing or using information in the normal course of performing your regular job duties." (See Confidentiality Notice and Acknowledgment, attached to Defendant's motion as Exhibit M) In the normal course of his job, Doss was informed by an employee of what she thought was a serious medical situation and Doss was asked by that employee to tell Bobbie Ploch, or someone at the Casino. Doss contacted Ray Lane, Kathy Pritchett and Bobbie Ploch, all managerial employees of the Defendant, in an attempt to accomplish this. This was done in the normal course of his duties of informing management of serious health concerns of their employees.

In contrast, Pritchett negligently disclosed this information to her husband and her daughter, and to Rebecca Heath, clearly violating Sam's Town's Confidentiality Policy. Pritchett also told Bobbie Ploch and Betty Ferguson. Doss had only told Pritchett to tell Bobbie Ploch, he certainly

10

did not ask her to tell these other persons.  Clearly, Pritchett was far more reckless with this information than Doss, and knew she had messed up, as evidenced by her calling Rebecca Heath and asking her to not say anything.  While Doss was terminated, Pritchett received a promotion.

Defendant claims that Pritchett is not a proper comparator, because Doss was a full-time manager and Pritchett was a part-time manager.  However, fatal to Defendant's argument is the fact that it cannot come forth with any argument why this distinction would be relevant to differential treatment.  Pritchett, as a part-time manager, would be subject to the same confidentiality policy as Doss.  Assuming, without agreeing, that Doss violated the policy, Pritchett did far worse in disseminating this information to another employee and her family, none of whom had a legitimate reason to know this information.  Defendant's claim that Pritchett had a right to tell this information to her family is absurd.  Pritchett could have told her husband that it was reported that someone at work may have TB and we need to get tested.   There was absolutely no reason, or justification, to tell her husband, in the presence of her daughter, who that person might be, and then repeat that information in front of Rebecca Heath and an employee at Walgreens.  By any reasonable standard, what Pritchett did was far more worthy of discipline than what Doss did.   While Doss was terminated, Pritchett was promoted.

"To establish a prima facie case, [the plaintiff] need only make a very minimal showing." *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).  Plaintiff has presented evidence "that gives rise to an inference of unlawful discrimination", thereby meeting his "light burden" of making a prima facie case.

### B.      Pretext

Once the Plaintiff has produced evidence to support each element of his or her prima facie

case, the burden of production then shifts to the defendant to come forth with evidence that the plaintiff was terminated for a legitimate, nondiscriminatory reason. *U. S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983).

Defendant originally told Doss that it fired him for violation of HIPAA law. It later added not calling in properly for days that he missed. After discovering that he did not violate HIPAA law, Defendant changed its story to claiming that Doss violated company policy. This is similarly not true in that Doss did exactly what any conscientious supervisor would have done in a similar situation. Defendant also initially claimed that he did not call in properly. However, it admitted to the MDES that it was incorrect about that as well. Regardless, Defendant has produced no admissible evidence that this is true. None of the statements procured by Defendant after the fact are sworn statements, and as such are improper summary judgment evidence and should be stricken.

After the Defendant has stated the reason for the termination, the burden then shifts back to the Plaintiff to introduce evidence that would tend to indicate that this was not the real reason. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

The United States Supreme Court has held:

The defendant's "production" (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven "that the defendant intentionally discriminated against [him]" because of his race. The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination ... upon such rejection, no additional proof of discrimination is *required.*

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993) (citations omitted).

According to *Reeves*:

[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.

*Reeves,* at 146.

Doss had never been written up prior to his termination.  Defendant claims that it fired Doss for violating HIPAA law.  When Defendant discovered that he did not violate HIPAA, it changed its story to claim that it fired him for violating company policy.  The fact that Defendant cannot keep its story straight indicates pretext.

Further, Defendant claims it fired Glenn Doss for disseminating information about Eckhardt's medical situation to supervisors, when Kathy Pritchett was promoted for doing far worse.

Besides telling supervisors, Pritchett told an hourly employee, her husband and her daughter.  Pritchett knew she had messed up in that she told the hourly employee, Rebecca Heath to not say anything.  The fact that Doss was fired for doing what any reasonable supervisor would have done under the circumstances, and Pritchett was promoted after negligently telling her husband, her daughter, Heath and a Walgreens employee, demonstrates that the proffered reason for Doss' termination is suspect.

Assuming, without agreeing, that Doss violated the policy, Pritchett did far worse in disseminating this information to another employee and her family, none of whom had a legitimate reason to know this information.  Defendant's claim that Pritchett had a right to tell this information to her family is weak.  Pritchett could have told her husband that it was reported that someone at work may have TB and we need to get tested.   There was absolutely no reason, or justification, to tell her husband, in the presence of her daughter, who that person might be and then repeat that information in front of Rebecca Heath and an employee at Walgreens.  This demonstrates that Defendant's reason for terminating Doss is not believable, and a reasonable jury can infer that the

13

real reason was intentional discrimination.

For all of these reasons, this Court should deny Defendant's Motion for Summary Judgment on Plaintiff's claim of gender discrimination.

### C.     Mixed Motive

In the alternative, Plaintiff can survive summary judgment by showing that gender discrimination was a motivating factor in termination, even if other factors were present.

On June 9, 2003, the United States Supreme Court handed down *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).   In a unanimous decision, Justice Thomas, writing for the Supreme Court, held that a "plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Id.* at 101.  Since *Desert Palace*, the other Circuits have been forced to change the standards for Title VII cases.  *See, Rowland v. American General Finance, Inc.*, 340 F.3d 187, 194 (4th Cir. 2003) (vacating jury verdict because plaintiff not given a mixed-motive instruction); *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 811 (6th Cir. 2004) (noting that Supreme Court in *Desert Palace* has cautioned courts against unwarranted limitations on otherwise unambiguous statutory text).  *See also*, *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061 (9th Cir. 2003).

On June 25, 2004, the Fifth Circuit indicated that it was in line with the United States Supreme Court, and no longer distinguished circumstantial from direct evidence in regard to Title VII cases.  *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004).  In *Rachid*, the Fifth Circuit held that a plaintiff can satisfy the third prong of the burden-shifting analysis either by

14

showing pretext or by showing that the protected characteristic was a motivating factor:

> Our holding today that the mixed-motives analysis used in Title VII cases post-*Desert Palace* is equally applicable in ADEA represents a merging of the *McDonnell Douglas* and *Price Waterhouse* approaches. Under this integrated approach, called, for simplicity, the modified *McDonnell Douglas* approach: the plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"

*Rachid,* 376 F.3d at 312.

Therefore, in the alternative, Plaintiff has created a jury question as to whether his gender was a motivating factor in his termination, even if other factors are present, and summary judgment would be improper.

### D.    Same Actor Inference

Defendant claims that it is entitled to a same actor inference because Roberta Ploch, the same person who hired Doss, also "recommended" his termination.  In *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 321 (5th Cir. 1997), the Fifth Circuit held, " Where, as here, the same actor **hires and fires** an employee, an inference that discrimination was not the employer's motive in terminating the employee is created."  *See Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.1996)." (Emphasis added)

In this case, Roberta Ploch hired Doss, but Betty Ferguson made the decision to terminate him.  In fact, when Ploch called Doss and told him he was fired, she told him it was out of her hands and was being handled by HR, meaning Betty Ferguson.  Marc Silverberg also states that Betty Ferguson made the decision to terminate Doss.  Ploch was just the messenger.

15

Defendant is not entitled to the same actor inference.

## CONCLUSION

For all the reasons stated herein, Plaintiff requests that Defendant's Motion for Summary

Judgment be denied, except where otherwise conceded.

Respectfully submitted,

WAIDE & ASSOCIATES, P.A.

BY: */s/ Ron L. Woodruff*
JIM WAIDE
MS BAR NO: 6857
RON L. WOODRUFF
MS BAR NO. 100391

WAIDE & ASSOCIATES, P.A.
ATTORNEYS AT LAW
POST OFFICE BOX 1357
TUPELO, MISSISSIPPI 38802
TELEPHONE: 662-842-7324
FACSIMILE: 662-842-8056
EMAIL: waide@waidelaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Ron L. Woodruff, attorney for Plaintiff, do hereby certify that I have this day electronically filed the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following:

Karen Gwinn Clay, Esq.
kclay@watkinsludlam.com
pcummins@watkinsludlam.com

Peyton S. Irby, Jr., Esq.
pirby@watkinsludlam.com
pcummins@watkinsludlam.com

THIS the 21st day of December, 2009.

BY:  ___/s/ *Ron L. Woodruff*___
        RON L. WOODRUFF